J-S05029-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GEORGE MACKRIDES III | : | |
| | : | |
| Appellant | : | No. 1290 EDA 2020 |

Appeal from the Judgment of Sentence Entered June 17, 2020,
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0002467-2019

BEFORE: BOWES, J., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, J.: **FILED: MAY 21, 2021**

George Mackrides III appeals from the judgment of sentence, entered in the Court of Common Pleas of Montgomery County, following his convictions, after a bench trial, of one count each of robbery of a motor vehicle (F-1),[1] robbery—take property from other/force (F-3),[2] and theft by unlawful taking or disposition (F-3);[3] five counts of simple assault (M-2);[4] eleven counts of recklessly endangering another person (REAP) (M-2);[5] six counts of

_____

[1] 18 Pa.C.S. § 3702(a).

[2] 18 Pa.C.S. § 3701(a)(1)(v).

[3] 18 Pa.C.S. § 3921(a).

[4] 18 Pa.C.S. § 2701(a).

[5] 18 Pa.C.S. § 2705.

the summary offense of harassment;[6] and four counts each of criminal attempt—robbery of a motor vehicle (F-1)[7] and criminal attempt—theft by unlawful taking (F-3).[8] After careful review, we vacate and remand for a new trial.

Mackrides' convictions arose from of a ten-hour crime spree, in March 2019, where he committed a vehicle theft and several attempted vehicle thefts in Whitpain Township.[9] Mackrides aggressively forced his way into the victims' vehicles while the victims were either inside or immediately outside of their respective vehicles.

Mackrides was represented at trial by Assistant Public Defender Denise Marone, Esquire, who entered her appearance in the matter on June 12, 2019, and remained as the attorney-of-record throughout sentencing. Beginning in July 2019,[10] and continuing until after sentencing in June 2020, Mackrides

---

[6] 18 Pa.C.S. § 2709(a)(1).

[7] 18 Pa.C.S. § 901(a).

[8] 18 Pa.C.S. § 901(a).

[9] **See** Trial Court Opinion, 10/8/22, at 1-5 (providing detailed account of facts underlying case).

[10] On July 5, 2019, the court rescheduled a pre-trial conference upon the defense's request. On August 8, 2019, the court, upon the request of the defendant, amended the pre-trial conference order and scheduled the call of the trial list for September 2019.

filed several *pro se* letters with the Montgomery County Clerk of Courts[11] and the trial judge indicating his displeasure with trial counsel's representation.[12] In one of those letters, dated September 11, 2019, Mackrides stated:

_____

[11] The clerk of courts forwarded those *pro se* filings to counsel pursuant to Pa.R.Crim.P. 576(A)(4).

[12] Those letters included the following sentiments toward counsel:

- he is "asking that [she] help him with this case at hand and give [him] 100% because it seems that [she] didn't want to help at all. [I] am asking for what I am due[,] that is[,] for you to help me with this situation. [She has] been [his] public defender for all over [sic] 2 months [and he] spoke to [her] 1 time;"
- he "would like [his] public defender removed from [his] case because [they're] not seeing eye to eye about how he would like to approach [his case]," . . . and it seems to [him that] she isn't trying to help [him with] anything;"
- he notes that "it is imperative that this is noted on [the] record[] that [he] would like to relieve Ms. Denise Marone of her duties, as her strategies are not to the best of [his] interest [and] it is pertinent to note that [he] ha[s] tried to contact Ms. Marone and ha[s] filed motions[] which benefit [him] and [his] defense that Ms. Marone has blatantly ignored[. Therefore, he] ask[s] the Honorable Judge to honor [his] request and appoint [him] new counsel;"
- he "would like to releave [sic] Ms. Denise Marone of her duties and get a court[-]appointed law[y]er [because] she isn't handling [his] case to the best of her duties [where he] asked her to put motions in [and] . . . tried to contact her multiple times through the consults [sic] which she never returns my calls;"
- he "do[esn't] feel right going to trial wit[h] her [where she] isn't following the steps [he] would like her to[]," [and so] 'I am . . . asking that you help me with this case at hand and give me 100% because it seems that you do not want to help at all[;]'" "for all o[f] [two] months [he] spoke to [Marone one] time and [she told him] about a deal that was not appropriate;"

*(Footnote Continued Next Page)*

It is imperative that this is noted on record, that I would like to relieve Ms. Denise Marone of her duties, as her strategies are not to the best of my interest. It is pertinent to note that I have tried to contact Ms. Marone, and have filed motions, which benefit me and my defense that Ms. Marone has blatantly ignored. I ask the Honorable Judge to honor my request and appoint me new counsel, court[-a]ppointed preferable. Thank you for your time and help in this matter.

Letter to Montgomery County Clerk of Courts, 9/11/19.

Immediately prior to proceeding to his waiver trial, Mackrides moved for a continuance to secure private counsel. The following exchange took place, on the record, between Mackrides and the trial judge, regarding the continuance request:

> THE COURT: **All right, well the attorneys tell me now that you asked for a continuance. I deny that request. We'll proceed to trial.**
>
> Do you want a jury or a bench trial today?
>
> [ATTORNEY MARONE]: **Your Honor, the reason he is asking for a continuance is so his family can hire private counsel.**
>
> THE COURT: **That request is denied. This is the day of trial.**
>
> Do you want a bench or a jury trial?
>
> [MACKRIDES]: I'll take the bench, because you [are] pushing me against the wall. I'll take the bench.

---

- he asks Attorney Marone to "put in [his] appeal . . . and get cop[ie]s of the transcripts of the bench trial [and that he] would like [her] help in the matter;" and
- he "would like it duly noted on record" that he "asked Denise Marone to file [his] appeal[,] but [he] s[aw that] she didn't so [he's] asking for a court[-]appointed law[yer] or public defender in the matter[.]'"

*See* Pro Se Letters, 7/17/19, 8/8/19, 9/17/19, 10/14/19, 12/12/19, 6/1/20, 6/6/20.

- 4 -

THE COURT:  [Counsel] has to go over some paperwork with you. And if I don't get this resolved in about five minutes, we'll bring up a jury and pick a jury.

[MACKRIDES]:  You can't pick a jury without me.  I'm supposed to be able to pick certain[. . .]

THE COURT:  I'm just asking you:  Do you want a jury or do you want a bench trial?

[MACKRIDES]:  **I'm asking you – it seem[s] to me -- can I say something, sir?  I asked to get another counsel.**

THE COURT:  **That request is denied.  It's not timely.  There is case law that suggests that that's improper to grant a continuance under those circumstances.**

[MACKRIDES]:  **I['ve] been asking about it.  I have been saying stuff about it for the last six months.**

THE COURT:  Well, that's enough.  I guess we'll pick a jury.  That's what you want, a jury brought up here?

[MACKRIDES]:  You can't pick a jury without me.  I have my rights. You have to follow the law.

THE COURT:  Well, let me tell you something.  If you act up and disrupt  --

[MACKRIDES]:  I'm not acting up in any degree.

THE COURT:  -- when I bring these people up here, I'll have you removed and we'll have the trial without you.

[MACKRIDES]:  **Sir, I'm only speaking on what I'm due.  That's it.  I'm due []effective counsel, and I said something about this for six months.  I'm not acting up.  I'm not saying anything wrong.  I'm saying what is due to me.**

You're making it seem like [. . . ]

THE COURT:  **Miss Marone will represent you at this trial.** And if you speak up like you are doing now during the time when we have the jurors in the room, then I'll have you removed until you behave.

[MACKRIDES]: That's what you['re] probably going to have to do, because you're not giving me a fair shot. You don't do that to anybody else.

THE COURT: So you're telling me I'll probably have to have you removed?

[MACKRIDES]: No, that's what you're saying. **You're saying I'm not allowed to speak up about my rights. These are my rights. How can I not speak up about my rights? It's the law. You have to follow the law.**

THE COURT: **Well, sir, as I told you before, Miss Marone will represent you, unless you want to represent yourself.**

[MACKRIDES]: **Sir, I've been asking her to step down to give me another appointed counsel.**

THE COURT: **That won't happen. That request is denied. That's an improper request.**

[MACKRIDES]: How? You're not giving me a fair shot at trial.

THE COURT: All right, then bring the jury up, please.

[MACKRIDES]: I asked for a bench trial. I didn't ask for a jury trial.

N.T. Bench Trial, 12/9/19, at 9-13 (emphasis added).

After denying the continuance request, the court proceeded to a non-jury trial on December 9, 2019, after which Mackrides was found guilty of the aforementioned offenses. Mackrides was sentenced to an aggregate term of

- 6 -

7½ to 15 years' imprisonment.[13]   The court also ordered Mackrides pay

$4,978.39 in restitution[14] and the costs of prosecution.[15]

Mackrides filed a timely *pro se* notice of appeal.[16]   After seeking and

receiving an extension, newly-appointed appellate counsel filed a timely court-

_____

[13] Mackrides was sentenced to 5 to 10 years' imprisonment on count 1 (robbery), a concurrent sentence of 1 to 5 years on count 2 (robbery-taking property from other/force), a concurrent sentence of 2½ to 5 years' imprisonment on counts 28-30 (criminal attempt), and a consecutive sentence of 2½ to 5 years on count 27 (criminal attempt).   Counts 3-7, 8-11, 13-14, and 31-34 merged for sentencing purposes.   The Commonwealth did not proceed on the remaining counts.

[14] The restitution represented the insurance deductible ($3,978.39) and cost of repairs on one of the victim's vehicles ($1,000).

[15] The trial court's June 17, 2020 order "determining costs" solely lists the amount of restitution Mackrides was ordered to pay; there is no specific amount set forth for the costs of prosecution.   However, the court's December 9, 2019 sentencing order specifically states that "Defendant is **sentenced to pay the costs of prosecution** and restitution of $4,978.39 . . . within the first 48 months of supervision in monthly installments as directed, and as authorized by law."   ***See*** Sentencing Order, 12/9/19, at 2 (emphasis added).

[16] Mackrides filed two *pro se* notices of appeal—one on June 23, 2020, and the other on July 17, 2020.   There is nothing on the docket indicating that Attorney Marone had been relieved of her duties at the time Mackrides filed his *pro se* notices of appeal.   In fact, the docket shows that a copy of Mackrides' June 23, 2020 notice of appeal was "forward[ed] to Attorney on Record[,] Denise Marone, Esq. 06/24/20."   Docket Entry, 6/23/20.   However, on June 1, 2020, Mackrides wrote a letter to the trial judge stating that he "**would like it duly noted on [the] record [that he had] asked Denise Marone to file [his] appeal, but [that he] see[s] she didn't**."   Letter, 6/1/20 (docketed by Montgomery County Clerk of Courts on 7/17/20) (emphasis added).   Interestingly, on June 25, 2020, the court granted Mackrides' *pro se* motion to proceed *in forma pauperis* with regard to his filing fee for his appeal and request of transcript, sending those orders directly to Mackrides in jail and not to Attorney Marone.   Notably, on July 7, 2020, Lee
*(Footnote Continued Next Page)*

ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[17] Mackrides raises the following issues for our consideration:

> (1) Did the [t]rial [c]ourt err in denying [Macrkrides'] request for a continuance so that his family could hire private counsel?
>
> (2) Did the [t]rial [c]ourt err in imposing costs of prosecution without considering [Mackrides'] ability to pay and his restitution obligation?

Appellant's Brief, at 2.

In his first issue on appeal, Mackrides contends that the trial court erred in denying his request for a continuance so that his family could hire private counsel for his trial. Specifically, Mackrides argues that he told the trial judge that current counsel was ineffective, but that the court did not inquire into the reasons why Mackrides believed that counsel's performance was subpar or why he was requesting a continuance to hire new counsel. *Id.* at 9. Finally, Mackrides claims that such a hasty decision to deny his request was an abuse of discretion where he had been asking to obtain new counsel for six months prior to trial.

_____

Awbrey, Esquire, from the Montgomery County Public Defendant's Office, entered her appearance on behalf of Mackrides.

[17] On June 23, 2020, Mackrides sought, *pro se*, and was granted *in forma pauperis* (IFP) status. In his verified IFP statement, he stated that he was "unable to seek financial assistance from family and friends." IFP Petition, 6/23/20. Although this statement seems contrary to his assertion at trial that his family would hire private counsel for him, this statement was verified six months *after* trial and, as duly noted, it does not relieve the court from conducting an inquiry into how and when Mackrides planned to secure private counsel.

Appellate review of a trial court's continuance decision is deferential. "The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. As we have consistently stated, an abuse of discretion is not merely an error of judgment. Rather, discretion is abused when 'the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record[.]'" *Commonwealth v. Randolph*, [] 873 A.2d 1277, 1281 (Pa. 2005) (quoting *Commonwealth v. McAleer*, [] 748 A.2d 670, 673 (Pa. 2000) (internal citations omitted)).

*Commonwealth v. Brooks*, 104 A.3d 466, 469 (Pa. 2014).

In *Commonwealth v. Broitman*, 217 A.3d 297 (Pa. Super. 2019), our Court noted that "a defendant's constitutional right to counsel of his choice is not absolute and 'must be weighed against[,] and may be reasonably restricted by[,] the state's interest in the swift and efficient administration of criminal justice.'" *Id.* at 300 (citation and internal quotation marks omitted). Moreover, "[a] trial court has 'wide latitude in balancing the right to counsel of choice against the needs of fairness . . . and against the demands of its calendar.'" *Id.* (citation omitted). In that vein, our Court has noted that a defendant's right to choose private counsel "must be exercised at a reasonable time and in a reasonable manner." *Commonwealth v. Rucker*, 761 A.2d 541, 542-43 (Pa. 2000).

In *Commonwealth v. Prysock*, 972 A.2d 539 (Pa. Super. 2009), our Court expounded on the erroneous deprivation of a defendant's Sixth Amendment right to private counsel, stating:

where a criminal defendant makes a showing that he has been erroneously deprived of the right to representation of the counsel

of his choice, he is neither required to demonstrate that he was prejudiced nor that the deprivation did not constitute harmless error. Rather, . . . such a violation is a structural error which pervades an entire trial.

*Id.* at 542, citing *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148-50, (2006). In *Prysock*, *supra*, this Court set forth the following factors to consider on appeal from a trial court's ruling on a continuance motion to obtain private representation: (1) whether the court conducted an extensive inquiry into the underlying causes of the defendant's dissatisfaction with current counsel; (2) whether the defendant's dissatisfaction with current counsel constituted irreconcilable differences; (3) the number of prior continuances; (4) the timing of the motion for continuance; (5) whether private counsel had actually been retained; and (6) the readiness of private counsel to proceed in a reasonable amount of time. *Id.* at 543. *See* Pa.R.Crim.P. 106 (D) ("A motion for continuance on behalf of the defendant shall be made not later than 48 hours before the time set for the proceeding. A later motion shall be entertained only when the opportunity therefor did not previously exist, or the defendant was not aware of the grounds for the motion, or the interests of justice require it.").

Analyzing the *Prysock* factors, the record reveals that the court did not inquire at all, let alone "extensive[ly]," into Mackrides' dissatisfaction with trial counsel or whether his dissatisfaction with counsel constituted irreconcilable differences and did not discuss the number of prior continuances that had been granted in the matter. *Prysock*, *supra* at 543. However, the record

- 10 -

shows that the court considered the fact that Mackrides waited until the day of trial to request a continuance so that his family could hire private counsel.[18]

In **Brooks**, **supra**, our Supreme Court reversed our Court's decision that reversed the defendant's judgment of sentence and remanded the case for a new trial on the basis that the trial court had denied the defendant's request for a continuance so that he could prepare to proceed to trial *pro se*. On discretionary review, the Supreme Court noted that the record revealed, among other things, that the trial court "had the benefit of specific reassurances from trial counsel" regarding any unresolved issues counsel and the defendant had. **Id.** at 539. Specifically, "[c]ounsel represented that he had discussed such matters related to his representation with [the defendant], and after questioning counsel, the court determined that counsel indeed was well-prepared; counsel, an officer of the court, in fact pronounced himself 'extraordinarily well prepared.'" **Id.** at 539-40 (citations to record omitted). Citing to a United States Supreme Court case, **Morris v. Slappy**, 461 U.S. 1 (1983), the **Brooks** Court noted that "[i]n the face of the unequivocal and uncontradicted statement by a responsible officer of the court that he was fully prepared and 'ready' for trial, it was far from an abuse of discretion to deny a continuance." **Id.** at 540 (citing **Morris**, **supra** at 12).

---

[18] The fact that Mackrides asked for a continuance so his family could retain private counsel seems to suggest that private counsel had not yet, in fact, been retained.

In ***Commonwealth v. Robinson***, 364 A.2d 665 (Pa. 1976), our Supreme Court noted that "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, **particularly in the reasons presented to the trial judge at the time the request is denied**." ***Id.*** at 594 (emphasis added; citation omitted). With this scope in mind, we must fully examine the tenor and content of the discourse that occurred regarding Mackrides' continuance request. ***See supra*** at 4-6.

Here, the trial judge never gave Mackrides an opportunity to present his reasons for asking for a continuance. ***Robinson***, ***supra***. ***Cf. Morris***, ***supra*** at 544 (noting trial court's awareness of circumstances surrounding defendant's request for continuance where court colloquied defendant and had extensive exchange with counsel). Additionally, Attorney Marone never indicated that she had discussed with her client the issues he had been having regarding her representation or indicated to the court that she was fully prepared to represent Mackrides at trial. ***Cf. Brooks***, ***supra***. In fact, the trial judge never even questioned counsel about her relationship with Mackrides. The trial court's instantaneous ruling, without any measured weighing of Mackrides' right to choose his own counsel against the state's interest in the swift and efficient administration of criminal justice, is hardly a "careful consideration of the matter." ***Cf. Commonwealth v. Sandusky***, 77 A.3d 663, 672 (Pa. Super. 2013). The trial judge never inquired into Mackrides' long-standing displeasure with his trial counsel; in fact, the court cut

Mackrides off every time he tried to explain his situation. The court's conduct is especially egregious where, for over four months preceding trial, Mackrides had repeatedly expressed his dissatisfaction with counsel's representation in *pro se* correspondence sent to the court and the clerk of courts and no hearing was held to determine whether, in fact, court-appointed counsel should be replaced. **Cf. Commonwealth v. Keaton**, 45 A.3d 1050 (Pa. 2012) (where defendant filed single *pro se* petition for withdrawal of counsel two months prior to trial, different trial judge held an *in camera* hearing on petition prior to trial).

Additionally, there was no on-the-record determination by the trial judge, prior to ruling on the continuance motion, that Attorney Marone had adequately represented Mackrides up to and until the time of trial. **Cf. Sandusky**, **supra** (where trial court notes defense team "was assuredly capable"); **Brooks**, **supra** at 535 (trial judge noted on record at time of continuance request that defendant's appointed trial counsel had "obtained a lot of evidence, a lot of discovery and had prepared for trial"). In fact, three of the four filings initiated by Attorney Marone[19] prior to trial were precipitated by Mackrides filing a *pro se* petition or motion of the same ilk, which he sent to counsel and asked her to file on his behalf. **See** *Pro Se* Motion to Reduce Bail, 7/22/19; *Pro Se* Petition to Dismiss for Lack of Speedy Trial/Rule 600,

---

[19] On her own initiative, Marone filed a request for pre-trial discovery, pursuant to Pa.R.Crim.P. 572, and an omnibus pre-trial motion to suppress on June 12, 2019.

9/10/19; *Pro Se* Rule Petition for Nominal Bail for Lack of Speedy Trial, 9/17/19. Finally, there is also nothing in the record showing that the Commonwealth opposed the requested continuance or indicated that it would suffer prejudice if a continuance were granted.[20] **Cf. Broitman**, **supra**.

While the timing of a continuance request, particularly within the 48 hours preceding trial, may support a trial judge's determination to deny the request, the decision "must [also] be combined with other circumstances." **Morris**, **supra** at 544; Pa.R.Crim.P. 106(D). Here, the trial court's sole reason for denying the continuance was the fact that it had been requested on the day of trial and, therefore, it "was not timely." **See** N.T. Non-Jury Trial, 12/9/19, at 9-13. The court never discussed any other factors or circumstances that went into its snap decision to deny the request. Specifically, the court did not discuss prior continuance requests made by Mackrides, did not determine that the case had been unreasonably delayed to that point, or inquire into how soon and by what means Mackrides' family would be able to secure private counsel for him. **Cf. Brooks**, **supra** at 543-44 ("[T]he record in this case reveals that the trial court did more than just simply deny the request for a continuance. The court was aware of the circumstances surrounding [the defendant's] request; the court's colloquy of

---

[20] In its brief, the Commonwealth contends that Mackrides' "differences with appointed counsel were not irreconcilable[] and he was not prejudiced by the denial of the continuance." Appellee's Brief, at 14. However, there is nothing in the record evidencing the tenor of the attorney-client relationship or how Mackrides would have prepared differently had he been given alternative counsel.

- 14 -

appellee, and its exchanges with counsel, properly informed its exercise of discretion."). Similarly, in **Prysock** the trial court relied on a single factor in making its decision to deny the defendant's requested continuances. **Id.** at 544. Specifically, the record reflected that the trial court failed to make any inquiry whatsoever into the nature of the dispute between the defendant and appointed counsel, and only based its decision on one reason—the fact of a prior continuance. **Id.** In vacating the defendant's judgment of sentence and remanding for a new trial, our Court highlighted the fact that the trial court "failed to make the type of detailed factual findings that we have previously commended and in their absence [we] have found an abuse of discretion." **Id.** at 544-45.

In its Rule 1925(a) opinion, the trial judge discussed how trial had originally been scheduled for September 16, 2019, and how "[Mackrides] had never previously informed th[e c]ourt of his wish to hire private counsel . . . **despite his representation that he has wanted to replace his current counsel for about six months**." Trial Court Opinion, 10/8/20, at 9 (emphasis added). It seems reasonable that the court's knowledge of Mackrides' longstanding issues with counsel's representation would have prompted some sort of inquiry or hearing prior to the start of trial. The court also cites Rule 106(D) in its opinion to support its conclusion that Mackrides' request was "untimely [and] not exercised at a reasonable time or in a reasonable manner," **id.**, and states that "to grant the request and to postpone the trial would have created an undue burden for the ten Commonwealth

- 15 -

witnesses who were present and ready to proceed." *Id.* Notably, these are after-the-fact justifications given by the trial court for denying Mackrides' continuance request prior to trial. As previously stated, the Commonwealth did not object on the record to Mackrides' continuance request at or prior to trial.

The trial court cites to **Commonwealth v. Boettcher**, 459 A.2d 806 (Pa. Super. 1983), to support its decision to deny Mackrides' request for a continuance. The facts of that case, however, differ from the instant case. In **Boettcher**, while the defendant was also represented up until trial by the public defender and his request for a continuance was made on the day trial was scheduled to begin, our Court stated that it was "clear from a review of the record that the public defender was well-prepared for trial and afforded [the defendant] a vigorous and well-conceived defense." **Id.** at 810. Moreover, our Court noted that "the trial court carefully considered other significant factors in denying [the] continuance request[,]" including: trial commenced only 29 days before expiration of the Pa.R.Crim.P. 1100 run date; the Commonwealth was ready to proceed with its witnesses, several of whom were not local residents, on the first day of the scheduled trial; and the defendant's proposed private attorney appeared in the courtroom during jury selection, but declined to participate in the trial when the court advised him he could do so immediately. **Id.**

Here, the trial judge explained on the record at trial that his reason for denying Mackrides' continuance request was because of its untimeliness. The

trial judge also told Mackrides that Attorney Marone would represent Mackrides unless he wanted to represent himself. *Id.* at 10, 12. The trial judge, however, neither commented on Attorney Marone's general trial competence or her representation of Mackrides up to that point, nor sought to ascertain whether the attorney-client relationship "had deteriorated to the point that [Attorney Marone] could not effectively represent him." *Keaton*, *supra*. Rather, in *post hoc* reasoning offered in his Rule 1925(a) opinion, the trial judge states that Mackrides never informed the court, prior to the day of trial, that he wished to hire private counsel. Trial Court Opinion, 10/8/20, at 9 (trial court noting "[r]ather[, Mackrides] waited until immediately prior to the trial's commencement in which to request a continuance in order to *hire* private counsel") (emphasis in original).

Here, Mackrides asserts that "[t]he trial court's reasoning is flawed insofar as it focused exclusively on the court's interest in the swift administration of justice and did not inquire into [his] interest to the right to counsel of his choosing." Appellant's Brief, at 13. Mackrides also complains that "the court never permitted [him] to articulate anything more detailed than the basic request to hire new counsel [despite the fact that he] tried several times to continue to speak to the court about his request . . . and each time the court informed [him] that he needed to stop speaking up and disrupting [the] proceedings." *Id.* at 14. We are inclined to agree with Mackrides' argument.

Mackrides was represented up until trial by Attorney Marone,[21] an assistant public defender. The trial court is correct in stating that our courts have repeatedly condemned waiting until the day of trial to request a continuance for purposes of retaining new counsel. *See Broitman*, *supra* (where defendant requested new counsel and continuance on eve of trial, request was not made within reasonable time or in reasonable manner); *Commonwealth v. Nicolella*, 452 A.2d 1055 (Pa. Super. 1982) (same); *Commonwealth Kittrell*, 427 A.2d 1380 (Pa. Super. 1981) (same). Additionally, where Mackrides' motion was made less than 48 hours before trial, he was required to prove that he is entitled to a continuance under Rule 106 by alleging that the opportunity to seek a continuance to hire private counsel did not previously exist or that he was not aware of the grounds for moving for a continuance. Pa.R.Crim.P. 106(D).

Based on the facts of record, however, we believe that the trial court's denial of a continuance was an abuse of discretion. The trial court made its decision without any inquiry, even minimal, into the reasons behind Mackrides' long-standing dissatisfaction with appointed counsel, counsel's effectiveness up to the date of trial, whether the Commonwealth would suffer prejudice were the continuance granted, whether delaying trial would "unduly disrupt"

---

[21] The docket entries indicate that Attorney Marone entered her appearance for Mackrides on June 12, 2019, and represented him through sentencing.

the efficient administration of justice,[22] and how long it would take and what means he would use to secure new counsel. The court's dismissive tone deprived Mackrides of his right to a fair trial with counsel of his choice. In sum, the record reveals that the court's decision on the request was anything but considered; rather, it was based on a single factor—the untimeliness of the request. Where a trial court denies a request for continuance, discretion is abused "where the defendant's right outweighs the Commonwealth's need for efficient administration." **Commonwealth v. Pantano**, 836 A.2d 948, 950 (Pa. Super. 2003) (citation omitted).

Although case law is clear that a defendant's constitutional right to counsel of his own choice is not absolute, it "*must be weighed against* and may be *reasonably* restricted by the state's interest in the swift and efficient administration of criminal justice." **Robinson**, **supra** (emphasis added). Here, the trial court failed to conduct "an extensive inquiry" into the underlying causes of Mackrides' dissatisfaction with Attorney Marone, of which it had been aware for months prior to trial, and forced him to proceed to trial. Under such circumstances, we conclude that the court's actions constituted an abuse of discretion. **Cf. Broitman**, **supra** (court properly denied continuance request where trial court conducted inquiry into defendant's dissatisfaction with

---

[22] In fact, only six months had elapsed from the time that Mackrides was charged in the criminal information until the commencement of trial. **Cf. Commonwealth v. Novak**, 150 A.2d 102 (Pa. 1959) (where defendant had two years in which to procure counsel of his liking, defendant's right to choose was not exercised in reasonable time and manner, when he waited until day of trial to select new counsel).

counsel, which only amount to legal advice he did not want to accept and court concluded postponing trial would create undue burden for Commonwealth's witnesses who were present and ready to proceed and delay would have caused "too great of an imposition" on Commonwealth and trial court's "already crowded schedule"); *Sandusky*, *supra* (trial court's decision to deny continuance not arbitrary where it "denote[d] a careful consideration of the matter" and "d[id] not reflect a myopic insistence upon expeditiousness in the face" of request).

Here, Mackrides has shown that he has been erroneously deprived of the right to representation of the counsel of his choice, which amounts to a structural error that pervaded his entire trial. *Prysock*, *supra*; *Gonzalez-Lopez*, *supra*. Under such circumstances, he is entitled to a new trial.[23]

---

[23] Although we are remanding for a new trial, we note that Mackrides would not be entitled to relief on his final claim on appeal in which he contends that the sentencing court was required to consider his ability to pay prior to imposing court costs where he is indigent. On March 23, 2021, this Court issued its decision in *Commonwealth v. Lopez*, 2021 PA Super 51 (Pa. Super. 2021) (en banc). Like Mackrides, Lopez challenged the trial court's imposition of mandatory court costs without first holding a hearing to determine his ability to pay, asserting that such a hearing is required under Pa.R.Crim.P. 706(c) and *Commonwealth v. Martin*, 335 A.2d 424 (Pa. Super. 1975) (holding court must hold ability-to-pay hearing when imposing fine), as well as sections 9721(c.1) and 9728(b.2) of the Sentencing Code. *See* 42 Pa.C.S.A. §§ 9721(c.1) and 9728(b.2). In rejecting Lopez's claim, this Court concluded that "[w]hen the sections of Rule 706 are read sequentially and as a whole, as the rules of statutory construction direct, it becomes clear that [s]ection C only requires a trial court to determine a defendant's ability to pay at a hearing that occurs prior to incarceration, as referenced in [s]ections A and B." *Lopez*, *supra* at *5. While the trial court maintains the discretion to conduct an ability-to-pay hearing prior to imposing

*(Footnote Continued Next Page)*

Judgment of sentence vacated. Case remanded for new trial.[24]

Jurisdiction relinquished.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>5/21/21</u>

---

costs, "nothing in the Rules of Criminal Procedure, the Sentencing Code[,] or established case law takes that discretion away from the trial court unless and until a defendant is in peril of going to prison for failing to pay the costs imposed on him." *Id.* at *11. Accordingly, Mackrides is entitled to no relief on his claim regarding costs.

[24] At his new trial, if Mackrides again expresses his dissatisfaction with counsel, the trial judge shall conduct "an extensive inquiry" including, but not limited to, the underlying cause of this dissatisfaction and whether that dissatisfaction with counsel constitutes irreconcilable differences entitling him to new counsel, whether appointed or retained.